UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER McKAY, #214086,

       Plaintiff,                    CIVIL ACTION NO. 10-11801

   v.                                     DISTRICT JUDGE PAUL D. BORMAN

DR. KILARU, ET AL.,               MAGISTRATE JUDGE MARK A. RANDON

       Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT DISPOSITIVE MOTIONS
(DKT. NOS. 50, 71 AND 74) AND DENY AS MOOT (DKT. NO. 53)**

**I. INTRODUCTION**

This is a prisoner civil rights case under 42 U.S.C. § 1983. Proceeding *pro se*, Plaintiff Christopher McKay filed suit against several health care professionals alleging that their medical treatment of his elevated liver enzyme levels and high blood pressure violated the Eighth Amendment to the United States Constitution. This matter is before the Court on four dispositive motions, through which Defendants Ramesh Kilaru M.D. ("Dr. Kilaru), Scott Holmes, M.D.("Dr. Holmes"), Vernon Stevenson, M.D. (Dr. Stevenson") and Beverly Sainz (a Physician Assistant ("P.A.") ((P.A. Sainz") (collectively "the moving Defendants") seek dismissal of Plaintiff's claims. (Dkt. Nos. 50, 53, 71 and 74). Plaintiff has responded to each of these motions (Dkt. Nos. 55, 57[1], 76 and 77) and a number of reply briefs and sur-reply briefs

---

[1] Docket entry 57 is entitled Plaintiff's "cross-motion" for summary judgment. However, it is only a response to Dr. Kilaru's motion (Dkt. No. 50). To the extent that Plaintiff's cross-motion seeks a judgment against Dr. Kilaru, it should be denied.

were also filed. Judge Paul Borman referred the matter to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Since the undersigned finds that, as a matter of law, Plaintiff's challenge to the treatment decisions of the moving Defendants is insufficient to establish a constitutional claim of deliberate indifference, **IT IS RECOMMENDED** that Plaintiff's claims against them be **DISMISSED WITH PREJUDICE**. Specifically, it is recommended that: (1) Dr. Kilaru's motion for summary judgment (Dkt. No. 50) be **GRANTED**; (2) Dr. Holmes and P.A. Sainz's motion for summary judgment (Dkt. No. 71) be **GRANTED**; (3) Dr. Stevenson's motion for summary judgment (Dkt. No. 74) be **GRANTED**; and Dr. Holmes, P.A. Sainz and Dr. Stevenson's motion to dismiss (Dkt. No. 53) be **DENIED** as moot. **IT IS FURTHER RECOMMENDED** that Plaintiff's claims against the remaining John and Jane Doe defendants be **DISMISSED WITHOUT PREJUDICE** for lack of service.

## II.  FACTS

The facts as alleged by Plaintiff are set forth in his Second Amended Complaint. (Dkt. No. 36). Plaintiff was transferred to Adrian Correctional Facility ("Adrian") in or about November of 2007. At Adrian, Plaintiff was evaluated by medical staff and placed on at least two medications: Vasotec (to lower his blood pressure)[2] and Simvastatin (to lower his cholesterol).[3] Plaintiff alleges that he often complained of headaches, nausea and a loss of

---

[2] Vasotec is a trademark for preparations of enalapril maleate and enalaprilat, which are used in the treatment of hypertension (high blood pressure). *Dorland's Illustrated Medical Dictionary* (31st ed. 2007) pp. 619, 2056

[3] Simvastatin is "an antihyperlipidemic agent. . .used to lower blood lipid levels in the treatment of hypercholesterolemia [high cholesterol] and other forms of dyslipidemia and to reduce the risk of morbidity and mortality associated with atherosclerosis and coronary heart disease." *Dorland's Illustrated Medical Dictionary* (31st ed. 2007) p. 1743. Zocor is a trademark preparation of Simvastatin. *Id.* at 2120.

appetite. *Id*. at ¶ 13. In June of 2008, Plaintiff tested negative for hepatitis.[4] (Dkt. No. 71, Ex. A pp. 25, 352).

**A. Dr. Holmes**

In August of 2008, Plaintiff was transferred from Adrian to the Bellamy Creek Correctional Facility ("Bellamy Creek"). There, Plaintiff alleges he saw Dr. Holmes, who increased his medication (Plaintiff did not indicate which one) from 20 mg to 40 mg. (Dkt. No. 1, ¶17). The medical records indicate that, on September 11, 2008, Dr. Holmes noted Plaintiff's blood pressure was "a little high" (141/91)[5] (Dkt. No. 71, Ex. A, p. 321); he diagnosed Plaintiff with hypertension and hyperlipidemia, continued his cholesterol and HCTZ medication[6], increased his Vasotec (blood pressure medication) dose and ordered a follow-up visit to re-check his blood pressure. *Id.* at 321-323.

Dr. Holmes, next examined Plaintiff on October 6, 2008, to follow-up on Plaintiff's blood pressure. *Id*. at 330-331. Dr. Holmes noted Plaintiff's blood pressure was now under good control (123/79). *Id.* at 330. He, therefore, continued Plaintiff's blood pressure medications and increased Plaintiff's Zocor, because Plaintiff's LDL cholesterol was elevated. *Id*. at 331. Dr.

---

[4] Hepatitis: inflammation of the liver. *Dorland's Illustrated Medical Dictionary* (31st ed. 2007) p. 856.

[5] Normal blood pressure is below 120/80 mm Hg; prehypertension is a systolic (top number) pressure of between 120-139 or a diastolic (bottom number) pressure of between 80-89; Stage 1 hypertension is a systolic range of 140-159 or a diastolic of 90-99; Stage 2 hypertension is a systolic range of 160 or higher or a diastolic of 100 or higher. See, http://www.mayoclinic.com/health/high-blood-pressure/DS00100/DSECTION=tests-and-diagnosis. The consequences of uncontrolled high blood pressure (i.e., heart attack, stoke and organ failure, etc) are well known.

[6] Hydrochlorothiazide (HCTZ) is used to treat high blood pressure and edema. www.drugs.com.

Holmes also ordered that Plaintiff's LDL cholesterol be rechecked, and that Plaintiff follow-up in a month. *Id.* at 331.

On November 4, 2008, Plaintiff underwent additional blood tests which revealed elevated liver enzymes and a normal LDL cholesterol level. *Id*. at 13, 9. Dr. Holmes provided his final treatment to Plaintiff related to this case on November 10, 2008. *Id.* at 335-336. During that visit, Dr. Holmes noted Plaintiff's hypertension and hyperlipidemia were under "fair" control (*id*. at 336) and that Plaintiff reported "feeling well." *Id*. at 335.

Plaintiff claims that he also complained to Dr. Holmes of headaches and trouble urinating (Dkt. No. 36, ¶18); Dr. Holmes did note Plaintiff's complaints of a "shy bladder" but there is no record that Plaintiff complained to him about headaches or nausea. Plaintiff was subsequently transferred to Cotton Correctional Facility ("Cotton"). *Id*.

**B. P.A. Sainz**

Plaintiff was transferred to Cotton in December of 2008. He recalls that in or about February of 2009, he saw P.A. Sainz with continued complaints of headaches, nausea and trouble urinating. *Id*. at ¶ 19. Plaintiff's medical records indicate that Plaintiff did not complain of headaches or nausea. (Dkt. 71, Ex. A, p. 351). P.A. Sainz likewise diagnosed Plaintiff with hypertension and hyperlipidemia, and noted that both conditions were under "good" control. *Id.* at 354. P.A. Sainz also observed that Plaintiff's liver enzymes became elevated when his Zocor medication was increased in October. *Id*. at 346. Accordingly, after noting that Plaintiff was negative for hepatitis (*id.* at 346), she decreased Plaintiff's Zocor dose and continued his blood pressure medications. *Id.* at 349. Last, P.A. Sainz ordered follow-up blood tests, an EKG and a follow-up appointment. *Id*. at 349-50.

### C. Dr. Stevenson

Five months later, on August 14, 2009, Plaintiff alleges that additional labs were taken that showed very high liver enzyme levels and other "abnormalities." (Dkt. No. 36, ¶ 20). Plaintiff claims that he spoke with Dr. Stevenson several times but nothing was done about his condition and Dr. Stevenson did not tell Plaintiff about any danger to his health. *Id.* Plaintiff was transferred from Cotton to Mound Correctional Facility ("Mound") sometime after August 14, 2009.

Dr. Stevenson testified that did not evaluate and/or treat Plaintiff (Dkt. No. 74, Ex. B (Dr. Stevenson Affidavit)), and there is no reference in the medical records that Dr. Stevenson provided any treatment to Plaintiff. Instead, Plaintiff was evaluated and treated by other medical service providers at Cotton.

### D. Allegations Against Dr. Kilaru

While at Mound, Plaintiff alleges that he continued to complain of headaches and also reported pain in his lower back and side. (Dkt. No. 36, ¶ 21). On October 9, 2009, Plaintiff alleges that Dr. Kilaru discontinued his Vasotec and Simvastatin prescriptions and told him that his blood pressure would be closely monitored. According to Plaintiff, Dr. Kilaru declined to provide any further medical treatment for his "liver problem." *Id.* at ¶¶ 22-23.

On the date of his visit with Dr. Kilaru, Plaintiff's blood pressure was well controlled (126/58). (Dkt. No. 71, Ex. A, p. 393). Dr. Kilaru noted elevated liver enzyme labs and suspected it was caused by the Vasotec (blood pressure medication). He also indicated that Plaintiff's hepatitis profile was normal and, therefore, stopped Plaintiff's Vasotec prescription and continued the HTCZ. *Id.*

# III. ANALYSIS

## A. Standard of Review

### 1. *Motion to Dismiss*

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. The Supreme Court has made clear that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."), quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Although the pleader is given the benefit of the doubt as to inferences that can be derived from the allegations, that deference "does not extend to facts which are not 'well-pleaded.' " *Greenberg v. Compuware Corp.*, 889 F.Supp. 1012, 1015–1016 (E.D. Mich. 1995).

Where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993).

### 2. *Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita*, 475 U.S. at 587.  The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law.  *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

**B.  Eighth Amendment Denial of Adequate Medical Care**

Distilled to its essence, Plaintiff's responses contend that his complaint sufficiently states a claim for violation of the Eighth Amendment against the moving Defendants, and that the medical records available to the Court are insufficient to make a judgment. (*See, for example*, Dkt. No. 76, pp. 4-5 and Dkt. No. 83, p. 3).  As discussed below, Plaintiff's "lack of discovery" response to the moving Defendants' motion for summary judgment is unavailing, and the undersigned finds that neither Dr. Holmes, P.A. Sainz, Dr. Stevenson nor Dr. Kilaru were deliberately indifferent to Plaintiff's high blood pressure or elevated liver enzyme levels as a

matter of law. As such, the undersigned need not consider the sufficiency of Plaintiff's complaint under Rule 12(b)(6).

A prisoner's claim that his constitutional right to medical treatment was violated is analyzed under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97 (1976). To state a § 1983 claim for a violation of a prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To succeed on a claim of deliberate indifference, Plaintiff must satisfy two elements, an objective one and a subjective one. *Wilson*, 501 U.S. at 300. The objective element is satisfied by a showing that Plaintiff had a serious medical need. *Wilson*, 501 U.S. at 297; *Farmer v. Brennan*, 511 U.S. 825 (1994). "To satisfy the subjective component, Plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), citing *Farmer*, 511 U.S. at 837. Emphasizing the subjective nature of this inquiry, the Supreme Court has noted that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Deliberate indifference is characterized by obduracy and wantonness, not inadvertence or good faith error. *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992). Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle*, 429 U.S. at 106. Nor is Plaintiff entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Moreover, where a prisoner has received some medical attention and the

dispute is over the adequacy of the treatment, courts are reluctant to second guess medical judgments. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

### 1. Elevated Liver Enzymes

According to the Mayo Clinic,[7] "[e]levated liver enzymes may indicate inflammation or damage to the cells in the liver," but in most cases the levels are only "mildly and temporarily elevated" and do not "signal a chronic, serious liver problem." There are number of causes of elevated liver enzymes, the most common of which are: "certain prescription medications, including statin drugs used to control cholesterol[;] drinking alcohol[;] heart failure[;] Hepatitis A, Hepatitis B, and Hepatitis C[;] obesity[; and] over-the-counter pain medications, including acetaminophen (Tylenol, others)." The most commonly found elevated liver enzymes are Alanine transaminase (ALT) and Aspartate transaminase (AST). The normal range of these levels for adult men is: "ALT 7 to 55 units per liter (U/L); AST 8 to 48 U/L." *See Hines v. Secretary of Health and Human Services,* 940 F.2d 1518, 1526 (Fed. Cir. 1991) ("[w]ell-known medical facts are the types of matters of which judicial notice may be taken.") (citing *Franklin Life Insurance Co. v. William Chapman & Company,* 350 F.2d 115, 130 (6th Cir. 1965)*, cert. denied,* 384 U.S. 928 (1966)).

Plaintiff's liver enzyme levels were closely monitored and have fluctuated from elevated to within the normal range. (Dkt. No. 71, Ex. A, pp. 5, 7, 9, 10, 11, 13, 14, 15, 17, 18, 20, 22 and 24). Indeed, the two most recent available lab tests – conducted on August 11, 2010 (*id.* at 19-20) and December 17, 2010 (*id*. at 11) – showed Plaintiff's ALT and AST levels *both* at or near the normal range (ALT 42 U/L AST 30; ALT 38 U/L AST 32 U/L respectively).

---

[7] http://www.mayoclinic.com/health/elevated-liver-enzymes/MY00508

### 2. The Moving Defendants were not Deliberately Indifferent

A reasonable jury would not conclude that either Dr. Holmes, P.A. Sainz or Dr. Kilaru's treatment of Plaintiff was "so cursory as to amount to no treatment at all" or was "grossly inadequate." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843-44 (6th Cir. 2002) (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)); *McCarthy v. Place*, 313 F. App'x 810, 814- 815 (6th Cir. 2008) (a question of fact exists as to whether a prison dentist, who for seven months treated an inmate complaining of intense pain due to a cavity with only ibuprofen – instead of filling the cavity – was deliberately indifferent). To the contrary, it appears that these medical personnel appropriately managed Plaintiff's high blood pressure, high cholesterol and, apparently, medication induced elevated liver enzyme levels.

Plaintiff presented to Dr. Holmes and P.A. Sainz with high blood pressure and high cholesterol. In response, Dr. Holmes increased Plaintiff's Vasotec (blood pressure medication) dose, continued Plaintiff's other blood pressure and cholesterol medication and ordered a follow-up visit. P.A. Sainz reasonably believed that Plaintiff's elevated liver enzyme levels were caused by his statin medication (Zocor). She, therefore, ordered his Zocor dose reduced and continued his blood pressure medications. Dr. Kilaru lowered Plaintiff's Vasotec, because, at the time, Plaintiff's blood pressure was "well controlled" and Dr. Kilaru suspected Vasotec was causing the elevated liver enzymes. Dr. Kilaru continued Plaintiff's other blood pressure and cholesterol medications. Under these circumstances, the appropriateness or adequacy of the selected treatment is not properly second guessed by the Court and is, at best, a claim for negligent treatment – which does not constitute unconstitutional deliberate indifference. *Estelle*, 429 U.S. at 106.

As to Dr. Stevenson, Plaintiff must also demonstrate his personal involvement in the activity that forms the basis of his complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). However, Plaintiff has provided no evidence that Dr. Stevenson evaluated or treated him. On the other hand, Dr. Stevenson has provided a sworn affidavit that he did not treat or evaluate Plaintiff, and the medical record supports Dr. Stevenson's assertion. As such, Dr. Stevenson's lack of involvement must result in dismissal of Plaintiff's claims against him.

## C. Further Discovery is Unnecessary

Although Plaintiff argues that the moving Defendants' motion is premature, he did not file an "affidavit," with respect to either motion, showing the specific reasons he "cannot present facts essential to justify" his opposition to the motion. Fed. R. Civ. P 56(f). A party may move for summary judgment "at any time until 30 days after the close of discovery." Fed. R. Civ. P. 56(c)(1)(A). And, Plaintiff did not deny by affidavit – which he clearly could have – that he received the treatment indicated in the medical records attached to the moving Defendants' briefs.

## D. The Unserved and Unnamed Defendants Should be Dismissed

Finally, as to the remaining John Doe and Jane Doe defendants, it is recommended that they be dismissed without prejudice. "An inmate who brings a civil rights complaint must specifically identify each defendant against whom relief is sought and must give each defendant notice of the action by serving upon him a summons and copy of the complaint." *Reed-Bey v. Pramstaller*, No. 06-10934, 2007 WL 2421422, *2 (E.D. Mich. Aug.23, 2007), citing *Feliciano v. DuBois*, 846 F.Supp. 1033, 1048 (D. Mass. 1994). Under Fed.R.Civ.P. 4(m), defendants must be served within 120 days of filing the complaint. Here, Plaintiff has failed to identify or serve

the John and Jane Doe defendants and this case has been pending for over 120 days (since May of 2010); thus, dismissal is proper. *Mackall v. Doe*, No. 05-60083-AA, 2005 WL 1843449, * 1 (E.D. Mich. July 29, 2005), citing *Awdish v. Pappas*, 159 F.Supp.2d 672, 673, n. 1 (E.D. Mich. 2001), and *Johnson v. City of Ecorse*, 137 F.Supp.2d 886, 892 (E.D. Mich. 2001). This Report and Recommendation will serve as notice to Plaintiff under Rule 4(m).

## IV. CONCLUSION

For the reasons indicated above, **IT IS RECOMMENDED** that: (1) Dr. Kilaru's motion for summary judgment (Dkt. No. 50) be **GRANTED**; (2) Dr. Holmes and P.A. Sainz's motion for summary judgment (Dkt. No. 71) be **GRANTED**; (3) Dr. Stevenson's motion for summary judgment (Dkt. No. 74) be **GRANTED**; and Dr. Holmes, P.A. Sainz and Dr. Stevenson's motion to dismiss (Dkt. No. 53) be **DENIED** as moot. **IT IS FURTHER RECOMMENDED** that Plaintiff's claims against the remaining John and Jane Doe defendants be **DISMISSED WITHOUT PREJUDICE** for lack of service.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>
MARK A. RANDON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: January 11, 2012

*Certificate of Service*

I hereby certify that a copy of the foregoing document was served on the parties of record on this date, January 11, 2012, by electronic and/or first class U.S. mail.

*s/Melody R. Miles*<br>
*Case Manager to Magistrate Judge Mark A. Randon*