UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER MCKAY,

    Plaintiff,

v.                                              Case No. 10-cv-11801
                                              Paul D. Borman
                                              United States District Judge

DR. (RAMESH) KILARU, et al.,              Mark A. Randon
                                              United States Magistrate Judge

    Defendants.
_____/

**OPINION AND ORDER (1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Dkt. No. 86), (2) GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Dkt. Nos. 50, 71 and 74), (3) DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS (Dkt. No. 53), and (4) DISMISSING WITHOUT PREJUDICE UNSERVED JOHN AND JANE DOE DEFENDANTS PURSUANT TO FED. R. CIV. P. 4(M)**

On May 4, 2010, Christopher McKay ("Plaintiff"), a prisoner at the Central Michigan Correctional Facility proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs. (Dkt. No. 1.) Ramesh Kilaru, M.D. ("Dr. Kilaru"), Scott Holmes, M.D. ("Dr. Holmes"), Vernon Stevenson, M.D. ("Dr. Stevenson"), and Beverly Sainz, a physician's assistant ("P.A. Sainz"), all filed motions to dismiss and for summary judgment. (Dkt. Nos. 50, 53, 71, and 74.) The Court referred these motions to the Magistrate Judge, who filed a Report and Recommendation to Grant Dispositive Motions on January 11, 2012. (Dkt. No. 86.) On January 23, 2012, Plaintiff filed Objections to the Report and Recommendation. (Dkt. No. 87.) Defendant Dr. Kilaru filed a Response on February 1, 2012, and the remaining Defendants filed a separate Response on February 8, 2012. (Dkt. Nos. 88, 89.) Plaintiff filed replies on

1

February 9 and 23, 2012. (Dkt. Nos. 90, 92.)

For the reasons stated below, the Court will ADOPT the Magistrate Judge's Report and Recommendation, GRANT Defendants' Motions for Summary Judgment, DENY AS MOOT Defendants' Motions to Dismiss, and DISMISS WITHOUT PREJUDICE the unserved John and Jane Doe Defendants.

## I. BACKGROUND

The Court adopts the facts as set forth in the Magistrate Judge's Report and Recommendation at pages 2 through 5. The Court specifically notes the following facts.

In August 2008, Plaintiff was transferred to the Bellamy Creek Correctional Facility. On October 6, 2008, Dr. Holmes reviewed Plaintiff's blood work and determined that he had elevated levels of LDL cholesterol. Dr. Holmes increased Plaintiff's cholesterol medication, Zocor, from 20 milligrams to 40 milligrams. Follow-up blood work was reviewed by Dr. Holmes on November 10, 2008, which revealed a decrease in Plaintiff's LDL cholesterol, but an increase in blood pressure and liver enzymes.

Plaintiff was transferred to Cotton Correctional Facility in December 2008. On February 11, 2009, P.A. Sainz reviewed Plaintiff's blood work and noted that his liver enzymes had increased when his Zocor prescription increased. Plaintiff claims that P.A. Sainz did not decrease his Zocor prescription (Pl.'s Obj. 3), but the medical records reflect that she did order a decrease in the Zocor prescription and a follow-up lab draw on March 19, 2009. (Defs.' Mot. for Summ. J. Ex. A, Medical Records 346-47.) On March 23, 2009, P.A. Sainz noted that Plaintiff still had abnormal liver enzymes and stated that he would be scheduled for a follow-up appointment to discuss changing or stopping his medication. On March 30, 2009, P.A. Sainz ordered a follow-up visit on Plaintiff's

elevated liver enzymes for sometime in April 2009.

In August 2009, Plaintiff was transferred to the Mound Correctional Facility. On October 9, 2009, Dr. Kilaru noted that Plaintiff's liver enzymes were still elevated. Dr. Kilaru stopped Plaintiff's prescription for Vasotec, noting that he suspected the elevated enzyme levels were drug related, and stated that Plaintiff's liver enzymes and blood pressure would continue to be monitored. Dr. Kilaru ordered weekly blood pressure checks and comprehensive lab work to be done on November 9, 2009.

## II. STANDARD OF REVIEW

When a party objects to a portion of a Magistrate Judge's report and recommendation, the Court must review that portion *de novo*. Fed. R. Civ. P. 72(b).

Defendants have moved for summary judgment under Federal Rule of Civil Procedure 56(c). "Summary judgment is proper when, viewing the facts and drawing all inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law." *Harris v. Metropolitan Gov't of Nashville and Davidson County, Tenn.*, 594 F.3d 476, 482 (6th Cir. 2009).

## III. ANALYSIS

The Magistrate Judge found that Plaintiff had failed to establish a genuine issue of material fact showing that any of the Defendants were deliberately indifferent to Plaintiff's high blood pressure or elevated liver enzyme levels. Plaintiff raised two objections: (1) that the Magistrate Judge erred by taking judicial notice of certain medical facts, *see Hines v. Sec'y of Health and Human Servs.*, 940 F.2d 1518, 1526 (Fed. Cir. 1991) (finding that failure to allow party to object prior to taking judicial notice of facts in a medical textbook did not violate fundamental fairness,

3

because objecting party had "a chance to discredit and rebut the information contained in that textbook on review before the Claims Court."); and (2) that the Magistrate Judge failed to consider Plaintiff's cardiovascular condition as a contributing cause to his elevated liver enzymes.

### A.  Dismissal of Unserved Defendants Pursuant to Federal Rule of Civil Procedure 4(m)

Plaintiff has raised no objection to the Magistrate Judge's recommendation to dismiss without prejudice the claims against unserved John and Jane Doe defendants pursuant to Fed. R. Civ. P. 4(m).  Accordingly, those Defendants will be dismissed without prejudice.

### B.  Plaintiff's Objections Regarding Summary Judgment

Even viewing the evidence in a light most favorable to Plaintiff, a reasonable juror could not find that any of the Defendants were deliberately indifferent to his medical care.

> In evaluating a deliberate indifference claim, we distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.  Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments.  However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (punctuation omitted) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)).  Accordingly, to the extent Plaintiff objects to the Magistrate Judge's failure to "second guess" the medical judgment of Defendants by factoring in Plaintiff's cardiovascular condition, Plaintiff's objections are denied.  Regarding Plaintiff's first objection, the Court finds the Magistrate Judge's consideration of certain medical facts immaterial in light of Plaintiff's failure to produce evidence of deliberate indifference.

The Sixth Circuit has held that inaccurate medical diagnoses by themselves do not constitute deliberate indifference.  *Jones v. Muskegon County*, 625 F.3d 935, 945 (6th Cir. 2010) (holding that

4

the defendant doctor's decision to treat an inmate's complaints of stomach pains with a laxative, where the inmate was later found to have gastro-intestinal cancer, was incorrect, but did not give rise to a deliberate indifference claim). In addition, the Sixth Circuit has noted that where a physician schedules an inmate for follow-up exams "to determine more precisely what was affecting [the inmate,]" a reasonable juror could not conclude that the physician provided grossly inadequate care. *Id*. at 945-46.

In the instant case, the evidence, when viewed in a light most favorable to Plaintiff, reflects that Plaintiff received treatment and continued monitoring for his elevated blood pressure and liver enzyme levels. Although the Defendants' attempts to lower Plaintiff's liver enzyme levels by changing his medications may have been incorrect, it is not proper for the Court to second guess these judgment calls. Furthermore, a reasonable juror could not conclude that such medical judgments constitute woefully inadequate medical care, particularly where the Defendants ordered follow-up treatment and monitoring.

With regard to Defendant Dr. Stevenson, the Court notes that the record contains conflicting affidavits. Specifically, Dr. Stevenson alleges that he never treated Plaintiff, and that his name only appears in Plaintiff's medical records because he was one of the medical service providers at the Cotton Correctional Facility. (Def. Dr. Stevenson's Mot. to Dismiss Ex. B, Stevenson Aff. ¶¶ 8-11.) Plaintiff alleges that, sometime in 2009, Dr. Stevenson told Plaintiff that he needed to see him regarding his blood work. (Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss Ex. 1, McKay Aff. ¶¶ 1, 3.)

However, the allegations in Plaintiff's affidavit conflict with evidence in the medical records and with the facts he alleges in his Second Amended Complaint. For example, Plaintiff claims that

5

he was never released for blood work while at the Cotton Correctional Facility. (McKay Aff. ¶ 4.) The medical record reflects that Plaintiff was repeatedly treated by P.A. Sainz while incarcerated at Cotton, which included requests for labs and follow-up visits. (Medical Records 345-63.) Plaintiff also alleges in his Second Amended Complaint that he was called out to have blood drawn while incarcerated at the Cotton facility on March 19, 2009, and again on August 14, 2009. (Second Am. Compl. ¶¶ 19, 20) (Dkt. No. 36.)

Furthermore, even if a reasonable juror could believe Plaintiff's allegations as set forth in his affidavit, they are not sufficient for the jury to conclude that Dr. Stevenson was deliberately indifferent to Plaintiff's medical needs. Plaintiff alleges that Dr. Stevenson stated: "I need to see you concerning your bloodwork [sic] as soon as you get out[,]" but then never ordered a blood draw for Plaintiff. (McKay Aff. ¶¶ 1-3.) There is no allegation of fact showing that Plaintiff was in any immediate distress, or that Dr. Stevenson refused to treat Plaintiff knowing that an adverse outcome was likely. "Generally, courts find deliberate indifference where there is evidence tending to establish that the physician is present while the inmate is in distress, that distress is communicated to the physician, and the physician purposefully ignores the distress knowing that an adverse outcome is likely to occur." *Jones*, 625 F.3d at 945. Viewing the evidence in a light most favorable to Plaintiff, a reasonable juror could not conclude that Dr. Stevenson knew Plaintiff was in any distress and purposefully ignored the distress while Plaintiff was incarcerated at the Cotton facility, particularly where Plaintiff admits that he was being treated by P.A. Sainz at that time.

Accordingly, the Court finds that Plaintiff has failed to establish a genuine issue of material fact with regard to his deliberate indifference claim.

### IV. CONCLUSION

For the reasons stated above, the Court

(1) **ADOPTS** the Magistrate Judge's Report and Recommendation;

(2) **GRANTS** Defendants' Motions for Summary Judgment;

(3) **DENIES AS MOOT** Defendants' Motion to Dismiss; and

(4) **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against the remaining John and Jane Doe Defendants.

This is a final order and closes the case.

**SO ORDERED.**

Dated:  March 30, 2012                            S/Paul D. Borman
                                                  PAUL D. BORMAN
                                                  UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to Christopher McKay, 214086, Central Michigan Correctional Facility, 320 N. Hubbard, St. Louis, MI 48880 and the attorneys of record on this date, March 30, 2012, by electronic and/or ordinary mail.

                                                  S/Julie Owens
                                                  Case Manager